UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

|  |  |  |
|---|---|---|
| In re: | ) | Master File No. CV 92-P-10000-S |
|  | ) |  |
| SILICONE GEL BREAST IMPLANTS | ) | This Document Relates To |
| PRODUCTS LIABILITY LITIGATION | ) | The Following Cases |
| (MDL-926) | ) |  |
|  |  |  |
| HEIDI LINDSEY, et al., | ) |  |
|          Plaintiffs; | ) |  |
|  | ) |  |
| -vs.- | ) | Case No. CV 94-P-11558-S |
|  | ) |  |
| DOW CORNING CORP., et al., | ) |  |
|          Defendants; | ) |  |

| (Lead Plaintiff) | (Case Number) |
|---|---|
| Beth Acoya | CV 92-P-10740-S |
| Betsy Cook | CV 94-P-10144-S |
| Unmesha Davis | CV 92-P-10825-S |
| Rebecca Dickens | CV 93-P-10121-S |
| Marla Harris | CV 93-P-10459-S |
| Dorothy Hopkins | CV 93-P-10644-S |
| Concha Huston | CV 92-P-10733-S |
| Barbara May | CV 92-P-10734-S |
| Marsha Reagan | CV 94-P-10143-S |
| Shirley Warner-Schuster | CV 93-P-10461-S |
| Ann Wolley | CV 94-P-14528-S |

Opinion–Claims of A. Gill Dyer and H. Thomas Murphy

Pending before the court are several motions relating to claims made by A. Gill Dyer and H. Thomas Murphy, who now represent or formerly have represented various plaintiffs in certain cases transferred to this court under 28 U.S.C. § 1407 and who also now represent or formerly have represented various members of the *Lindsey* class participating in the Revised Settlement Program. Under rules of the Judicial Panel on Multidistrict Litigation and pretrial orders in this court, Dyer and Murphy, who were then authorized to practice law in Louisiana, were permitted to continue to represent clients in cases transferred to this court by the JPMDL, as well as to represent clients with claims under original global settlement and subsequent Revised Settlement Program in the *Lindsey* case.[1]

I. INTERVENTIONS

In each of the cases listed above in the caption by the names of the lead plaintiff, Dyer and/or Murphy

---

1. In October 1996 Dyer was, by a unanimous *en banc* order of disbarment, precluded from appearing as counsel in the United States District Court for the Eastern District of Louisiana, an order later affirmed by the 5th Circuit Court of Appeals. In February 1998 he was indefinitely suspended by the State Bar of Louisiana. So far as is known, Dyer's representation of clients in other states was premised upon his being licensed to practice in Louisiana.

2335

were co-counsel of record for the plaintiffs when the cases, which had been filed in the United States District Court for the District of New Mexico, were transferred by the Judicial Panel on Multidistrict Litigation to this court. After being discharged as counsel on the motion of the individual plaintiffs, they obtained in November 1994 leave of court to file complaints in intervention, in which they sought to impose an attorney's lien on any proceeds recovered by plaintiffs for the costs they claimed to have incurred and for a share of any attorney's fees to which the plaintiffs' remaining attorneys (Sara Beth Beasley and Melinda Silver) might ultimately be entitled.

Through brief interrogatories served on June 1, 1995, the plaintiffs asked Dyer and Murphy to (1) "describe in detail each and every service each of you performed on behalf of the plaintiff" and (2) "give an itemization of the expenses each of you incurred on behalf of the plaintiff" in these cases. In mid-August 1995, Dyer and Murphy responded — objecting to answering the first interrogatory on the basis that time spent by them was irrelevant since their claim was based on sharing in any contingency fee recovery, and, to the second interrogatory, answering that an "interim cost bill for this plaintiff is in the process of being compiled and audited and will be provided at a later date". They did not respond to the plaintiffs' requests under Rule 34, which had asked for production of any time sheets or other documents reflecting time devoted to performance of legal services and expenses claimed to have been incurred.

In late August 1995, having been unable to resolve informally their dissatisfaction with Dyer's and Murphy's response, plaintiffs filed motions to compel. Eleven months later, when the promised cost bills still had not been provided, the court granted these motions. In addition to directing that the requested documents be made available for inspection and copying, the court directed Dyer and Murphy to answer the two interrogatories by September 9, 1996. On September 9th, in an unverified response, Dyer "answered" interrogatory #1 as to each plaintiff with a 48-word generalization regarding services rendered. With respect to interrogatory #2, calling for an itemization of expenses claimed to have been incurred, Dyer responded by merely saying that records would be "available for inspection at offices of A. Gill Dyer 9:00 A.M. - 5:00 P.M."

In November 1996, plaintiffs filed a motion for an order of sanctions, which chronicled their repeated unsuccessful efforts to obtain discovery of information obviously critical to the intervention claims and asked for dismissal of these claims with prejudice under Rule 37(b)(2)(C), together with their costs for bringing the motion. In their memorandum opposing this motion, filed in December 1996, Dyer and Murphy simply reiterated that records were available for inspection at their Louisiana offices – saying that "the invoices in these cases involve hundreds of pages of correspondence and bills which counsel for plaintiffs are free to look through", but hardly specifying (as required by Rule 33(d)) the records "in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."

On February 5, 1997, the court granted the plaintiffs' motion to dismiss with prejudice Dyer's and Murphy's complaints in intervention, also awarding plaintiffs' counsel $2,941.23 for their time and expenses in preparing and presenting the motion for sanctions.[2] On February 26, 1997, Dyer filed a motion for reconsideration, but on March 6, 1997, before that motion could be considered, he filed a notice of appeal from the order. In August 1997 the Circuit Court of Appeals for the 11th Circuit dismissed the appeal for lack of jurisdiction, concluding that, since the February 5, 1997, order was not certified as final under Rule 54(b) and did not resolve claims of all parties in these cases, there was no final order then appealable.

---

2. On March 7, 1997, the United States District Court for the District of New Mexico entered an order dismissing with prejudice, on similar grounds, Dyer's and Murphy's intervention claims in eight breast-implant cases that, on this court's suggestion, had been remanded by the JPMDL back to the transferor court.

What is now before the court is Dyer's motion for reconsideration of the February 5, 1997, order that had dismissed the complaints in intervention filed by Dyer and Murphy. Plaintiffs — and presumably joined in by Dyer and Murphy also — have suggested that the court's ruling on this motion should be made final under Rule 54(b).

The court has, on the intervenors' motion, reconsidered its ruling of February 5, 1997,[3/] but nevertheless concludes that this ruling — dismissing with prejudice the complaints in intervention by Dyer and Murphy in the cases listed in the caption by name of the lead plaintiff, as well as awarding $2,941.23 in fees and expenses to plaintiffs' counsel — was correct and is due to be reaffirmed. It is clear that Dyer and Murphy failed to obey — timely, or even to this date — this court's July 1996 order directing that they provide an itemization of the expenses claimed to have been incurred on behalf of the plaintiffs for which they were attempting to assert a lien. Their belated effort to use Rule 33(d) was clearly unwarranted and inadequate given (1) the court's order that they answer interrogatory #2 (in addition to making records available), (2) their earlier response (in August 1995) that cost bills were in the process of being prepared and would be provided, and (3) the fact that — since, presumably, Dyer had already calculated these expenses[4/] — the burden of ascertaining the answer would not be substantially the same for the interrogating party and the party served.[5/] By separate order, the court will deny the motion for reconsideration and will certify this order, as well as the February 5, 1997, order as final under Rule 54(b).

## II. INFORMATION REGARDING CLAIMS UNDER REVISED SETTLEMENT PROGRAM

As a separate, but related, matter, Dyer filed on December 3, 1997, a motion to obtain from the Claims Administrator who is administering the Revised Settlement Program in the *Lindsey* case certain information relating to the status of claims that may have been made under the RSP by persons previously represented by Dyer.[6/] In general, the court has restricted access to such information in order to protect the privacy interests of persons making claims under the RSP, and the Claims Administrator, consistent with these restrictions, properly declined, despite repeated requests from Dyer, to provide such information to him since, at the request of such persons, he was no longer shown as their legal representative and, indeed, had been disbarred by order of the United States District Court for the Eastern District of Louisiana.

Starting in late March 1997, and continuing into February 1998, Dyer began filing with the Claims

---

3. In May 1997 the plaintiffs moved to strike the intervenors' memorandum in support of their motion for reconsideration. This motion to strike will be denied. In ruling on the intervenors' motion for reconsideration, the court has considered all materials submitted by the parties.

4. In their complaints in intervention, Dyer and Murphy had specified the total costs claimed to have been incurred with respect to the various plaintiffs, ranging from $1,696.45 (plaintiff Cook) to $10,403.49 (plaintiff Acoya).

5. One can only speculate as to why Dyer failed, notwithstanding the court's order, to provide plaintiffs with a verified itemization of the costs claimed to have been incurred on their behalf. This court does, however, take judicial notice that during the 1995-96 time-period Dyer was the subject of a disciplinary proceeding in the USDC for the Eastern District of Louisiana - which ultimately resulted in October 1996 in his disbarment by that court, based in part on findings by clear and convincing evidence that (in a non-breast implant case in which he similarly filed a motion to intervene after being discharged by the client) he had overbilled the client by claiming numerous expenses that had not been incurred. The Magistrate Judge before whom the evidentiary hearing was conducted noted that "after hearing Dyer's story, I find that nothing he says is believable."

6. In addition to the 11 implant-recipients who were plaintiff in the cases involved in part I of this opinion, Dyer identified 25 others as also being former clients with respect to whom he sought information regarding any claims by them under the RSP. Eight of the 25 were plaintiffs in the cases remanded to the USDC for the District of New Mexico, in which that court had dismissed with prejudice Dyer's and Murphy's claims for fees and costs.

Office notices that he was claiming a lien for fees and expenses (unspecified in amount) with respect to amounts payable to such persons under the RSP. These liens were properly disregarded by the Claims Administrator with respect to amounts payable under the RSP to the 19 plaintiffs where, as a sanction for non-compliance with an order from this court or the USDC for the District of New Mexico, those claims had been dismissed with prejudice. As to the other 17 former clients, however, neither his discharge by the client nor his disbarment would necessarily invalidate his potential entitlement to compensation for services previously rendered or for reimbursement of expenses, depending upon the nature of his prior arrangement with the client and the circumstances of his being discharged.

Recognizing the potential validity of Dyer's lien respecting these 17 former clients, the Claims Administrator has attempted, before making payment under the RSP to such persons, to advise both the client and Dyer of the lien and to indicate that payment would either have to be made jointly to them or be withheld pending a resolution of any dispute regarding his claim for fees and expenses. Although unhappy with the content of the notice, Dyer has apparently worked out satisfactory arrangements with some of these former clients regarding his claim, and payment has been made accordingly by the Claims Office. There have, however, apparently been two situations where his lien claim, though received before a check was issued, was not recorded in the Claims Office until after the computer-generated checks were already in process, resulting in advance payments under the RSP being sent to the claimant without Dyer being advised or named as a co-payee on the check.[7]

The thrust of Dyer's motion is that in order to assert and enforce his potential lien claims — whether valid or invalid — he needs information from the Claims Office not merely at the time a former client is determined to be eligible for a payment, but also with respect to the current status of their claims under the RSP, e.g., whether they have "opted out" of the RSP, how any claim by them under the RSP is being classified, and whether (or when) any payments have been made to them under the RSP without his having concurred in a distribution. Under the peculiar circumstances presented in this motion, the court agrees with Dyer that he has a legitimate need for additional information regarding the status of his former clients under the RSP that, consistent with former orders, the Claims Office has been precluded from providing to him. Dyer's motion for information from the Claims Office regarding the status of claims by persons formerly represented by him — other than with respect to the 19 persons where his claim for fees and expenses has

---

7. One of these former clients (Ettin) apparently will be due a subsequent distribution which, if appropriate, can be subjected to Mr. Dyer's lien claim. The other former client (Lane) is apparently not entitled at this time to a subsequent distribution; after receiving information from the Claims Office concerning Ms. Lane's status and prior payment, Mr. Dyer should contact Ms. Lane and her current counsel to see if satisfactory arrangements can be made respecting his claim; failing that, he should file under oath with the Claims Office a *detailed and itemized* statement, with appropriate documentary evidence, regarding the services performed and expenses incurred on behalf of Ms. Lane. Mr. Dyer is cautioned that the terms of the RSP limit the total amount of attorneys' fees that can be charged to specified percentages of RSP payments — *e.g.*, 10% of the first $10,000. He is also cautioned that there are limitations regarding expenses that may be chargeable against RSP payments:

> "Certain expenses — if allowable under applicable state law and the individual arrangment between you [the claimant} and your attorney — can be charged against the advance payment if they are solely attributable to your claim or case. Chargeable expenses are limited to the following types of cost incurred on your behalf: medical evaluation expenses, expenses incurred in obtaining copies of your medical records, medical bills paid on your behalf, court costs, court reporter expenses, expert witness fees, expenses of medical witnesses, and travel costs incurred for depositions or court appearances in your case. If allowed by applicable state law and ethical standards, any expenses reimbursed to the lawyer from your advance payment should be deducted from the advance payment before calculating the allowable attorneys' fee."

Though the two checks were issued after Dyer's lien claims were received, the instructions for computer-processing of the check had apparently been issued before the Claims Office received Dyer's lien claims — hardly justifying Dyer's characterization in a letter to this court dated April 1, 1998, of a "fraudulent" distribution by the Claims Office.

4

been denied with prejudice by this court or the court in New Mexico — will be GRANTED to the extent of authorizing the Claims Office to provide such information to him notwithstanding earlier orders restricting access to such information.

### III. FURTHER REPRESENTATION IN BREAST-IMPLANT CASES PENDING IN THIS COURT

In the process of preparing this opinion, the court has discovered that Mr. Dyer continues to be shown as an attorney of record for the plaintiff in a large number of cases, still pending in this court, most of which were transferred from — and are potentially to be remanded to — a United States District Court in Louisiana, where he has been suspended indefinitely from practicing law and where in the Eastern District he has been disbarred from further practice. So far as can be determined, his authorization to act as counsel in other courts was premised upon his being licensed in Louisiana. It may well be that he also is being shown on the records of the Claims Office as representing persons who are participants in the RSP. By separate order, the court will direct Mr. Dyer to show cause why he should not be removed as an attorney of record in these cases and as a representative of claimants under the RSP.

This the 1st day of May, 1998.

_____
United States District Judge

Service:  Plaintiffs' Liaison Counsel
          Defendants' Liaison Consel
          A. Gill Dyer
          H. Thomas Murphy
          Sara Beth Beasley
          Melinda Silver
          Claims Administrator