UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

FILED
AUG 2 4 1998
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA



ENTERED
AUG 2 6 1998

In re: )
)
SILICONE GEL BREAST IMPLANTS ) Master File CV 92-P-10000-S
PRODUCTS LIABILITY LITIGATION )
(MDL 926) )
)
HEIDI LINDSEY, et al., )
       Plaintiffs; )
)
-vs- ) No. CV 94-11558-S
)
)
DOW CORNING CORPORATION, et al., )
       Defendants. )

## Opinion with respect to Order 45A
### (Objections to Foreign Settlement Program)

On July 30, 1998, there was filed with the Clerk a Motion to Intervene, a Motion for Reconsideration, and a Notice of Appeal submitted on behalf of Edeltrude Berson, Sieglinde Esders, and Ulrike Kuklinski by their attorneys (Melissa R. Ferrari and Robert J. Fiore). Both motions and the notice are directed to Order 45, which was entered on June 26, 1998, and which (1) confirmed the court's earlier approval of distribution of a Notice describing the details of the Foreign Settlement Program and (2) announced the willingness of defendants Bristol, Baxter, and 3M to tender an offer to domestic "Other Registrants" that would provide a settlement option equal to that being made to "Foreign Other Registrants." Since the movants have treated Order 45 as a final order from which an appeal might have been taken, the court will, for purposes of this opinion, do likewise.

Each of the three movants is dissatisfied with provisions in the Notice of the Foreign Settlement Program under which the defendants Bristol, Baxter, and 3M are offering, on a voluntary basis, a settlement to the movants and other eligible "foreign" recipients of implants manufactured by those companies. They make two complaints: (1) there is an inequity with respect to benefits potentially payable to Foreign Other Registrants under the Foreign Settlement Program ("FSP") in comparison with benefits potentially payable to Domestic Other Registrants under the Revised Settlement Program ("RSP"), a separate plan offered by certain defendants to domestic recipients of their implants; and (2) the plan for distribution is, with respect to "Foreign Other Registrants", inequitable as among such Foreign Other Registrants because all would receive the same amount regardless of differences in their individual medical conditions.

### I. THE MOVANTS.

No details about the movants and their status in this litigation are provided in the motions, in the notice of appeal, or in the accompanying memorandum. All that can be gleaned or inferred from these documents is that the movants believe themselves to be "Foreign Other Claimants" as defined in the Notice of the Foreign Settlement Program. These omissions have delayed the court in its consideration of the movants' requests. Rather, however, than simply rejecting their requests based on this failure to provide essential information, the court has obtained records from the Claims Office from which most of this information can be derived. Based upon these records, I assume the following to be accurate:

1740
2469

Edeltrude Berson: a citizen of Austria, residing in Germany. In September 1994 she registered with Claims Office (Reg. No. AUT-90-0252) and filed a Disease Compensation Claim Form (claiming ARS with severity level B). Apparently no medical documentation of medical condition or disability was ever filed. According to her forms, she received Dow implants in 1980; these were removed and replaced with Surgitek (Bristol) implants in 1985; these were removed and replaced with Mentor implants in 1993. All surgeries were performed in Germany. In 1997 she received payment from the Mentor settlement fund. Upon timely submission of a Foreign Claim Form, personal identification, and proof of manufacturer, she would be eligible to participate in the FSP and would be entitled to benefits as a Foreign Other Registrant.

Sieglinde Esders: a citizen and resident of Germany. In September 1994 she registered with the Claims Office (Reg. No. GER-90-1560) and filed a Disease Compensation Claim Form (claiming ANDS, Primary Sjogren's Syndrome, and ARS with disability level A). Medical documentation, with English translation, was filed with the Claims Office on November 30, 1994. According to her forms, she received Heyer-Schulte (Baxter) implants in 1977; these were removed in 1988 after earlier rupture. Both surgeries occurred in Germany. Upon timely submission of a Foreign Claim Form, personal identification, and proof of manufacturer, she would be eligible to participate in FSP as a Foreign Current Claimant (not merely a Foreign Other Registrant).

Ulrike (Reimer) Kuklinski: a citizen and resident of Germany. In September 1994 she registered with the Claims Office (Reg. No. GER-90-1129) and filed a Disease Compensation Claim Form (claiming Sclerosis, Dermatomyositis, and ARS with disability level A) Medical documentation, with English translation, was filed with the Claims Office in early December 1994. According to her forms, she received Surgitek (Bristol) implants in Germany in 1986; these were still implanted when she registered, but one had apparently ruptured. Upon timely submission of a Foreign Claim Form, personal identification, and proof of manufacturer, she would be eligible to participate in FSP not merely as a Foreign Other Claimant but as a Foreign Current Claimant (including explantation benefits if she chooses to have the implants removed).

## II. TIMELINESS.

On July 27, 1998, Melissa R. Ferrari, an attorney for the movants, faxed copies of the two motions and the notice of appeal to my office. According to her cover letter, "I understand that you do not normally accept filings via fax, however, your law clerk authorized my use of your fax number in this particular circumstance in order to protect the timeliness of the appeal." This language is accurate in part and inaccurate in part. As on special request we occasionally do, one of my law clerks did authorize use of our fax machine for the attorney to transmit an informational copy of these materials to my office. I have been assured, however, that no request was made and no authorization was expressed that receipt of the faxed copies would constitute a filing with the court. Indeed, neither a law clerk nor myself would have authority to authorize such a filing since our local rules do not permit fax filings and, to the best of my knowledge, no one in my office has ever purported to authorize such a filing.[1] The two motions and the notice of appeal must be treated as not having been received for filing until July 30, 1998, when they were received by the Clerk's office.

Their motion for reconsideration of Order 45 must be denied as untimely, not having been filed within the 10-day period prescribed in Fed. R. Civ. P. 59. The untimeliness of this motion is unaffected by movants' contention that the documents should have been treated as filed when copies were received by fax in the

---

1. Even if the law clerk inappropriately said something understood by the movants' attorney as authorizing a fax filing, it is hard to imagine any detrimental reliance on such statement since, at the time of the conversation—on the morning of July 27th, the final day for filing the Notice of Appeal — the movants' attorney had the Notice of Appeal with her in Germany.

2

judge's office.

The notice of appeal—which the court concludes must be treated as not received for filing until July 30, 1998—was also untimely, not having been filed within the 30-day period specified by Fed. R. App. P. 4(a)(1). Having itself been untimely, the motion for reconsideration did not extend the period for filing a notice of appeal.

Under Fed. R. App. P (a)(5), this court would be empowered to grant a limited extension of time for filing a notice of appeal upon a motion for extension being filed within 60 days after entry of the order to be appealed from. The court concludes that, under the circumstances, it can and should treat the two motions and notice as being the equivalent of such a motion. However, such an extension is to be granted only "upon a showing of excusable neglect or good cause," and the court concludes that neither condition is fulfilled.

A brief chronology of the significant events is revealing:

September 1, 1994     Court approves Rule 23(b)(3) class settlement with respect to claims against most U.S.-based manufacturers. Foreign implant-recipients were offered more limited benefits than domestic class members, but were also provided additional opt-out rights, as well as the opportunity to pursue breast-implant claims in the administrative and judicial tribunals of their own countries (without having to opt-out). To be treated as "Current Claimants," domestic implant recipients had to submit supporting medical documentation of their claims by October 16, 1994. Because of potential delays in mailing and the need for English translations, foreign implant recipients had until December 1, 1994, to submit such documentation. Some foreign claimants, dissatisfied with having less benefits than domestic claimants, appealed; these appeals were later dismissed.

Fall 1995     Court determines that, because the large amount of potentially acceptable current claims and the bankruptcy of Dow Corning, it would not be possible to make payments under the announced terms of the original "global" settlement, and that accordingly class members should be provided a second right to opt out, as the earlier notice had guaranteed.

December 1995     Court approves a Revised Settlement Program ("RSP"), under which some of the manufacturers (primarily Bristol, Baxter and 3M) who had been parties to the original settlement would make offers of settlement to some members of the original class. Under the RSP, greater benefit options were provided to "Current Claimants" — those who had submitted the supporting medical documentation by the 1994 deadline — than for other eligible implant-recipients. The RSP provided potential benefits only to domestic recipients of implants from those companies.

November 14, 1996     After negotiations with the Foreign Claimants Committee previously designated by the court, Bristol, Baxter, and 3M agree to a "Statement of Principles" of a Foreign Settlement Program ("FSP") under which those companies would make individual offers of settlement to eligible "foreign" recipients of their implants. Those eligible to participate would be classified either as "Foreign Current Claimants" or as "Foreign Other Registrants." The Settling Defendants would offer to pay Foreign Current Claimants under the FSP on the generally the same basis, though with some exceptions, as they had offered to pay domestic "Current Claimants" under the RSP. Based on the number of participating Foreign Other Claimants, the Settling Defendants offered to pay into a fund the same amount per participant as was provided under certain settlements in the Canadian courts (then believed to be in the

| | |
|---|---|
| | range of $2,000 to $3,000 per participant), but with the plan for distribution among those participants to be determined later (the defendants disclaiming any interest in the plan for distribution). |
| December 13, 1996 | Court approves Statement of Principles respecting this offer by Bristol, Baxter, and 3M to eligible foreign recipients of their implants. This order and a copy of the Statement of Principles was promptly put on the court's webpage. |
| 1997-early 1998 | Various telephone discussions occur between the court, members of the Foreign Claimants Committee, the Claims Administrator, and the class counsel for domestic participants under the RSP. Discussed were problems relating to appropriate proof of manufacture and personal identification, and to production and translation of medical records. Certainly a primary concern was how to construct terms for a plan of distribution to participating "Foreign Other Registrants" that, given the funding and timing constraints under the FSP, would not unduly deplete or delay payments to such persons. Attorneys for Settling Defendants participated in these conversations, but—consistent with their position that this was a matter they did not want to be involved in—generally remained silent about the details of any plan of distribution. Foreign Claimants Committee attempted to persuade the Settling Defendants to change the terms of their offer to provide benefits more comparable to those offered domestic claimants and, indeed, to "cover" certain medical conditions for foreign claimants that were not covered under the RSP for domestic claimants. Settling Defendants ultimately agreed to raise the amount of their per capita contribution based on the number of participating Foreign Other Registrants from the amount being paid under the Canadian settlements, which by this time has dropped to less than $1,500 (US), to $3,500 (US). Court periodically advises through postings on its webpage that these discussions are ongoing. |
| Feb.-Mar. 1998 | Foreign Claimants Committee submits to court three options for a plan of distribution regarding payments to Foreign Other Registrants. One option--though least favored by several members of the Committee--was simply to distribute to each qualifying participant the $3,500 being paid under the FSP by the Settling Defendants based on such person's participation. Other options favored by some members of the Committee involved determining the distributable share of such participants in some manner based on the nature and severity of any covered disease manifested after implantation, much like the benefit options being offered by the Settling Defendants under the RSP to domestic other registrants. During telephonic discussions (in at least one of which counsel for these movants participated), court explored with members of the Committee the problems such other options would present. The basic problems were that, because of the terms of the FSP (which differed materially from the terms of the RSP being offered by the Settling Defendants to domestic Other Registrants), (1) all funds paid by the Settling Defendants on behalf of the Foreign Other Registrants would essentially have to be held in escrow for 12-15 years before any payments could be made to such persons; (2) in the notice describing opt-out rights it would not be possible to describe the potential benefits payable to Foreign Other Registrants, and (3) the costs to claimants in documenting their claims (including translation into English of medical records) would substantially diminish their net recovery from an already-limited fund. The court indicated that in its view the severity-disease based plans suggested by some members of the Foreign Claimants Committee would be unworkable and result in the great majority of Foreign Other Registrants receiving nothing. The Court indicated that it would, with the help of the Claims Office, draft an appropriate notice, |

4

|  |  |
|---|---|
| | including its conclusion for a pro-rata distribution to Foreign Other Registrants of the funds to be paid on their behalf by the Settling Defendants under the FSP.[2] |
| May 1, 1998 | Court posts notice on its webpage that final details concerning the FSP notice are expected soon. |
| May 29, 1998 | Court posts notice on its webpage that by June 15, 1998, final details concerning the FSP notice will be completed and the notice posted on the webpage and mailed to foreign attorneys and unrepresented foreign registrants. |
| June 10, 1998 | Court posts notice on its webpage that it has approved the FSP notice, claim form, etc. and that they will be distributed on June 15, 1998. Since June 10th, the notice, claim form, etc. have been available for viewing and downloading from the webpage. The notice includes the provisions for making distribution to Foreign Other Registrants--i.e., $3,500 for each eligible Foreign Other Registrant who, by June 15, 1999, files a claim, submits proof of identification, and provides proof of manufacture of a covered implant. The notice also contains provisions for opting out if the person is dissatisfied with the terms of the offer, including the opportunity to delay this decision until after being advised by the Claims Office whether the person would qualify for benefits as a Foreign Current Claimant. |
| June 15, 1998 | Claims Office begins distribution of notices, claim forms, etc. to attorneys and unrepresented foreign registrants. |
| June 26, 1998 | Court enters Order 45, confirming what had previously been announced and implemented — namely, that it had approved the detailed notice of the FSP for distribution on June 15th. The primary purpose of Order 45 was to authorize Bristol, Baxter, and 3M to make an offer to domestic Other Registrants that would provide them (as an alternative to other potential benefits under the RSP) with the same benefits as offered to Foreign Other Registrants, i.e., $3,500. |
| July 27, 1998 | Attorneys for the three movants fax to Judge's office copies of the two motions and the notice of appeal. all directed to Order 45. |
| July 30, 1998 | Clerk of Court receives the two motions, the Notice of Appeal, and a filing fee of $105.00. Clerk dockets the two motions but, since the purported appellants were not parties in any case, held the Notice of Appeal awaiting further directions from the court.[3] |

As indicated, one of the two objections of the movants is that foreign recipients of the Settling Defendants' implants under the FSP are provided with less benefits than domestic recipients of such implants under the RSP, particularly with respect to those not qualifying as Current Claimants. This is a fact, but one that has been true and known since December 1996, when the court entered its order approving the Statement of Principles regarding the FSP. Clearly, the movants' efforts, through a belated attempt in late July 1998

---

    2. The Court has no specific recollection as to whether either attorney for these movants was a participant in conversations in which the court expressed its view that the only workable solution was an equal distribution to all "Foreign Other Registrants." Obviously if either of them did participate in such a telephone conference that would further weaken any request for late filing.

    3. Although concluding that the Notice of Appeal is untimely and ineffective, the Court does direct the Clerk to show it as filed as of July 30, 1998.

5

to challenge the existence of disparities between domestic and foreign implant recipients cannot be viewed as based on "excusable neglect or good cause." The court declines to grant an extension of time under Fed. R. App. P. 4(a)(5) for such an appeal. For like reasons, the court concludes that movants' request to intervene for that purpose is similarly untimely and must be denied.

The movants' other objection relates to the distribution plan for benefits payable to Foreign Other Registrants.[4] It is true that their attorney filed the Notice of Appeal only 4 days late (34 days after the June 26th entry of Order 45), but the attorney was, or could easily have been, aware of the terms of the distribution plan since June 10th, when the approved notice was made immediately accessible to all on the court's webpage. Moreover, by the time the Notice of Appeal was filed, 45 days had elapsed since the Notice, which included the terms of the distribution plan and attached Claim Forms, had been mailed to foreign registrants and their attorneys. If the results sought by the movants would merely have the effect of increasing their own benefits under the FSP without adversely affecting the benefits afforded under the FSP to others, the court might be tempted to extend the time for an appeal under Fed. R. App. P. 4(a)(5). However, under the FSP there is a limited and discrete amount to be set aside for payment of benefits to all qualifying Foreign Other Registrants —namely, $3,500 multiplied by the number of such persons —and, were the movants to succeed in their effort to have distribution plan based on the medical condition of each such person, it would affect all "Foreign Other Registrants."

The court concludes that the movants have not, and cannot, show "excusable neglect or good cause" such as would justify an extension of time under Fed. R. App. P. 4(a)(5) for a late filing of their Notice of Appeal addressed to the distribution plan. For the same reasons, the court concludes that movants' request to intervene for that purpose is similarly untimely and must be denied.

It may be noted that this is not a situation in which a person might suffer impairment of a right as a result of untimely filing of a document with the court — the movants are not obligated to accept the benefits offered to implant recipients under the FSP. If dissatisfied with those benefits, they can reject those benefits (actively, by opting out, preserving whatever rights they may have to pursue litigation in the United States, or passively, by doing nothing, preserving whatever rights they may have in the administrative and judicial tribunals of their own country.)

III. MERITS

Although the court does not reach the merits of the contentions raised by the movants, a few comments may be appropriate to indicate what it would have ruled if their motion for reconsideration had been timely.

The movants' contentions that the FSP should be, on reconsideration, be vacated and set aside because of disparities between what the Settling Defendants have offered to eligible domestic recipients of their implants and what they are offering to eligible foreign recipients of their implants are wholly without merit. Contrary to the movants' arguments, the Settling Defendants, as non-governmental entities, are not constrained by Fourteenth Amendment "due process" or "equal protection" provisions to make the same or substantially similar settlement offers to domestic and foreign recipients of their implants, and, indeed, even if such provisions did apply, the "settlement values" of their potential claims are, as movants argue, substantially different from that of domestic claimants. Their arguments premised on provisions of the 1954 Treaty between the United States and the Federal Republic of Germany are similarly specious. Even if timely, their request for reconsideration relating to the domestic-foreign disparity would be denied.

The movants' contention that the distribution plan for Foreign Other Registrants should on

---

4. As earlier noted, two of the three movants would qualify for benefits payable to Foreign Current Claimants.

reconsideration, be replaced, as a matter of equity, with a severity-disease plan based on the particular medical conditions of each participant has a certain attractiveness and, indeed, was carefully considered by the Court before it concluded that such a plan would be unworkable and unfair. As indicated earlier, the fact that under the FSP (unlike the RSP) there will be a discrete, limited amount of funds available to pay the claims of all Other Registrants — and the defendants have, as is certainly their right, declined to change what they are willing to pay in offering such settlements — means that adoption of a severity-disease based plan would effectively require that no payments be made to any Foreign Other Registrant until all such claims had been made and evaluated, presumably 12 to 15 years from now (if the domestic model were followed). Thousands of Foreign Other Registrants being asked to consider whether to accept the terms of the FSP would probably never receive any distribution, and those who might ultimately receive more than the amount afforded by the per-capita distribution of the approved plan would have their net benefits reduced by their costs in obtaining (and perhaps translating) their medical records. The court would be unable to provide meaningful information during the opt-out period to enable potentially eligible participants to intelligently decide whether to accept or reject the defendants' offer of settlement. Even if timely, the request for reconsideration (probably applicable only to movant Edeltrude Berson) relating to the distribution plan for Foreign Other Registrants would be denied. If dissatisfied with the Settling Defendnts' offer, she is not required to accept it.

This the 21st day of August, 1998.

Sam C. Pointer
Chief Judge Sam C. Pointer, Jr.

Service List:
Plaintiffs Liaison Counsel
Defendants Liaison Counsel
Ms. Melissa R. Ferrari
Ms. Sybil Shainwald
Mr. Richard W. Eittreim
Mr. Peter W. Morgan
Mr. Miles N. Ruthberg