**United States District Court**
**Northern District of Alabama**
**Southern Division**



FILED
01 JUN -4 AM 11:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

In re: ]
Silicone Gel Breast Implants Products ] Master File No. CV-92-N-10000-S
Liability Litigation (MDL 926), ]

**Memorandum of Opinion**

ENTERED
JUN 4 2001

### I.  Introduction.

This action is before the court on motion of Minnesota Mining and Manufacturing Company (hereinafter "3M") for an injunction pursuant to the All Writs Act, 28 U.S.C. §1651 (2001), preventing 42 persons from prosecuting breast implant claims against 3M in the Louisiana state court action *Spitzfaden v. Dow Chemical, et al.*, Civil District Court for the State of Louisiana, No. 92-2589, Division "F." (hereinafter, *"Spitzfaden"*). As explained herein, the motion for injunctive relief will be denied.

### II.  Statement of Facts.

The *Spitzfaden* action was filed in Louisiana state court in early 1992 and a class was certified that same year. The moving party, 3M, is one of the named defendants in *Spitzfaden*. The respondents were apparently not named as plaintiffs in *Spitzfaden*, but they claim in the present proceedings that they were members of the *Spitzfaden* class.

On June 25, 1992, the Judicial Panel on Multidistrict Litigation transferred all pending federal court actions alleging injuries from silicone gel breast implants to the Northern District of Alabama. *See In re Silicone Gel Breast Implants Prods. Liab. Litig. (MDL 926)*,



793 F. Supp. 1098 (J.P.M.L. 1992). In April 1994, Judge Sam Pointer[1] of this court provisionally certified *Lindsey v. Dow Corning, et al.*, as a class action for settlement purposes under Fed. R. Civ. P. 23(b)(3). By Order 27, entered on December 22, 1995, Judge Pointer approved a Revised Settlement Program for the *Lindsey* class. Under the terms of Order 27, Judge Pointer retained jurisdiction to oversee implementation of the settlement. During the course of the settlement proceedings before Judge Pointer, members of the *Lindsey* class were afforded two opportunities to opt-out of the settlement. Those who did not opt-out were permanently enjoined from bringing suit against the settling defendants based on injuries allegedly caused by silicone gel breast implants.[2]

Five of the respondents[3] (hereinafter, "Five Respondents") never opted-out of the *Lindsey* class. Thirty-six of the respondents[4] (hereinafter, "36 Respondents") opted out of the *Lindsey* class and filed individual actions in federal courts against, *inter alios*, 3M,

---

[1] The case was originally assigned to Chief Judge Sam C. Pointer in 1992 and was managed by him until his retirement from the bench in early April 2000. Management responsibility of the remaining cases in MDL 926 was transferred to the undersigned.

[2] Order 27 incorporated the injunction set out in an earlier order approving a Global Settlement Program, which provided, in pertinent part: "each member of the class is barred and permanently enjoined from instituting, asserting, or prosecuting against any of the Settling Defendants or Released Parties in any pending or future action in any federal or state court in this country, or in any court or tribunal in any other country, any and all claims which such individual had, has, or may have in the future against any of such persons and entities with respect to any existing or future claim, known or unknown, accrued or unaccrued, for personal injury or death that may be asserted as due in whole or part to any breast implant...."

[3] Linda Bubeck, Kathleen Comeaux, Janet Hartman, Deborah Panebiango, and Karen Richmond.

[4] Tina Berteau, Brenda Boudoin, Gloria Breaux, Nelwyn Broussard, Diana Callaway, Joycelyn Chatelain, Peggy Conrad, Pilar Deveintemilla, Jacqueline Edwards, Lynnda Ell, Jeanette Esser, Patricia Miloure Friloux, Terry Hermis, Sheila Hucke, Lee Ann Jenkins, Leslie Jones, Alicia Kornick, Alicia Matherne, Sharon McNeal, Peggy Musmeci, Karen (Rohrbacker) Nikitin, Sheila Oncale, Phyllis Osborne, Annuncietta Piazza, Patricia Pierre, Sandra Roberts, Eliane Rodrigue, Shirley Rutledge, Marie Shaban, Sandra Smith, Thuy Sophonwantana, Vivian Stegman, Sally Williams-Sylve, Sandra Walley Trahan, Tammy Williams and Lynne Wroten Cuevas. One additional respondent, Cathy Kron, filed a federal action which was transferred for inclusion in the MDL 926 proceedings, but she did not assert claims against 3M.

seeking relief from injuries allegedly related to silicone breast implants. Their federal actions were transferred to this court by the Judicial Panel on Multidistrict Litigation for pretrial proceedings pursuant to MDL 926.

The *Spitzfaden* class was decertified on December 1, 1997, and notice of the decertification was published on June 5, 1998.

In October 1998,[5] Judge Pointer dismissed the 36 Respondents' federal actions for failure to prosecute. By the terms of that order, dismissed parties were allowed until October 26, 1999, to move for reinstatement. None of the respondents moved to reinstate their federal action. Instead, in December 1998, all 42 respondents filed intervention petitions in the *Spitzfaden* decertified class action.

### III. Discussion.

#### A. The All Writs Act and the Anti-Injunction Act.

Federal courts have the authority under the All Writs Act to issue extraordinary writs if "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651 (2001). "[T]he granting of an extraordinary writ is, in itself, extraordinary." *In re Sindram*, 498 U.S. 177, 179 (1991).

---

[5] On or about April 1998, Judge Pointer identified approximately 15,000 MDL 926 cases that appeared for a number of reasons to be dormant. He issued Order 44, directing plaintiffs to identify those claims that should not be dismissed by July 17, 1998. Order 44 specifically provided that "a failure to respond by the due date will be treated as a motion to dismiss under the conditions specified in paragraph 2(b) of this order." Order No. 44 was served on counsel in the manner previously established by Judge Pointer and was posted on the MDL 926 WEB page. In August 1998, Judge Pointer, having considered the responses to Order 44, compiled a list of dormant cases still potentially subject to dismissal or administrative closing and published that list on the MDL 926 WEB page in August 1998. He allowed parties an additional opportunity to make corrections to the listing until September 18, 1998. On September 21, 1998, Judge Pointer issued Order 44A providing that all parties should notify the court by October 23, 1998, "which of the cases listed in the appendix to this order should not be dismissed/administratively closed under the conditions of this order."

On October 26, 1998, Judge Pointer issued Order 44B dismissing all the claims that had been listed in Order 44A and for which there had been no timely and satisfactory response. The order stated that "the dismissal will be considered as with prejudice to the extent of precluding breast implant claims by the plaintiff . . . against such defendants in other cases in federal or state courts." Order 44B also provided that: "The plaintiff(s) in such cases will have the right to vacate the dismissal and reinstate in this court any previously pending claims against any of the other defendants by written motion filed in this court within 1 year after the date of this order." Thus, the plaintiff was allowed until October 26, 1999, to discover that the claim had been dismissed and to move for reinstatement.

3

Moreover, when a federal court is asked to enjoin state proceedings, an injunction which may be otherwise appropriate under the All Writs Act and proper under general equitable principles must be further constrained by the limits of the Anti-Injunction Act, which provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283 (2001). An injunction of parties to state court litigation falls within the purview of the Anti-Injunction Act because "proceeding" is a comprehensive term, covering the parties to the state court litigation as well as the court itself. *Hill v. Martin*, 296 U.S. 393 (1935). Therefore, this Court may not grant the relief sought by 3M unless the injunction falls within one of the three narrowly defined exceptions of the Anti-Injunction Act. Although the exceptions are designed to ensure the effectiveness and supremacy of federal law, they are not to be enlarged by "loose statutory construction." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988); *Atlantic Coast Line R. R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287 (1970).

The movant argues that the proposed injunction is appropriate because it is necessary in "aid of jurisdiction" or necessary "to protect or effectuate" this court's judgment.

4

1.  **The "Necessary In Aid Of Jurisdiction" Exception.**

The "necessary in aid of jurisdiction" exception does not permit federal courts to enjoin state court proceedings merely because the state proceedings simultaneously duplicate the federal action. *Atlantic Coast Line R.R.*, 398 U.S. at 295. An injunction of state court proceedings is necessary in aid of jurisdiction when needed "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.* Ordinarily this exception applies only to parallel *in rem* actions in the state courts. However, many courts, including the Eleventh Circuit, have found that the exception applies to permit injunction of some parallel state proceedings when the federal court is managing complex litigation or class actions and conflicting orders from the state court would frustrate the orderly management and resolution of the federal litigation. *See, e.g., Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1201-1203 (7th Cir. 1996); *Wesch v. Folsom*, 6 F.3d 1465 (11th Cir. 1993); *In re Agent Orange Prod. Liab. Litig.*, 996 F.2d 1425 (2d Cir. 1993); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 204 (3d Cir. 1993); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877 (11th Cir. 1989); *In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332 (5th Cir. 1981).

In *Wesch v. Folsom*, 6 F.3d 1465 (11th Cir. 1993), the Eleventh Circuit found an injunction was proper where the state action was brought by members of the federal class and the relief requested of the state court, congressional redistricting for Alabama, was in conflict with the federal court's final judgment which retained continuing jurisdiction, specified an appropriate redistricting plan, and rejected the redistricting plan proposed to

the state court. In *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877 (11th Cir. 1989), the federal court had certified a 23(b)(2) class and after seven years of complicated antitrust litigation, final judgment in the federal proceeding, and retention of continuing jurisdiction by the district court, two members of the federal class brought a class suit in state court asserting identical claims to those which had been decided in the class action.

Like the courts in *Battle* and *Wesch*, this court has entered final judgment and retained continuing jurisdiction to oversee the management of complex litigation, namely, the *Lindsey* class settlement. Accordingly, an injunction of conflicting state proceedings appears to be in compliance with this court's authority under the All Writs Act and the Anti-Injunction Act. However, Judge Pointer has already entered an injunction in Order 27 precluding *Lindsey* class members from prosecuting separate actions against the *Lindsey* settling defendants based on injuries allegedly resulting from silicone gel breast implants. The state court claims of the Five Respondents who did not opt out of the *Lindsey* class which are based on injuries resulting from silicone gel breast implants are unambiguously in violation of the injunction in Order 27.

Therefore, it appears that 3M's request for an additional injunction of the Five Respondents is redundant. Further, it appears that additional action of any kind from this court may be unnecessary because the Five Respondents have not objected to the injunction or argued that it does not apply to their claims. To the extent the Five Respondents do not comply with the original injunction in Order 27 in the future, the court will consider requests for initiation of contempt proceedings. However, the present motion for additional injunctive relief will be denied.

The claims of the 36 Respondents who have opted-out of the *Lindsey* class are not within the scope of the "necessary in aid of jurisdiction" exception to the Anti-Injunction Act, since the court's continuing jurisdiction was limited to members of the class.

### 2. The "Protection of Judgment" Exception.

The "protection of judgment" exception to the Anti-Injunction Act, also called the "relitigation exception," permits injunctions of state court proceedings which are "necessary to protect or effectuate the [federal] court's judgment." The relitigation exception was "designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel." *Chick Kam Choo*, 486 U.S. at 147. Most courts limit the application of the relitigation exception to those issues which were actually litigated in the federal court, so the exception, as it is usually applied, is more akin to collateral estoppel. *See, e.g., Santopadre v. Pelican Homestead & Sav. Ass'n*, 937 F.2d 268, 273 (5th Cir. 1991); 17 Moore's Federal Practice, § 121.08[2] (Matthew Bender 3d ed.)

The relitigation exception must be considered in conjunction with the Full Faith and Credit Act, which provides, in pertinent part, that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738 (2001). Because a federal court must give the same preclusive effect to a state court judgment that another court of that state would give, this court is barred from enjoining the Louisiana proceedings under the relitigation exception if the Louisiana court has already rejected a

7

claim of res judicata based on the prior federal judgment. *See Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986).

The 36 Respondents argue the relitigation exception does not apply to them because they were members of the *Spitzfaden* class before they commenced their federal actions and, therefore, the action was "previously presented to" the state court. Their argument stems from a misapprehension about the appropriate focus of inquiry under the Anti-Injunction Act and the Full Faith and Credit Act. The tension created by the existence of a dual system of federal and state courts is not resolved by examining the actions of the litigant, who created the friction by bringing claims in both federal and state courts. Rather, the tension is solved by determining whether the federal court has finally decided the claims at issue. Thus, the relitigation exception applies to permit an injunction of state proceedings when an issue was "previously presented to *and decided by the federal court*." *Chick Kam Choo*, 486 U.S. at 147 (emphasis added).

The 36 Respondents also claim the Full Faith and Credit Act bars an injunction in this case because the Lousiana state court ruled on the merits of the res judicata issue when it denied 3M's "Exception of Lis Pendens." In that motion, 3M argued "many of the intervenors have previously filed separate federal court actions which remain pending with regard to their claims" and that "such duplicate claim[s] may be subject to the declinatory exception of lis pendens." (Resp't. Mem. of Law in Opp'n, Ex. C (Doc. 3147)).

> The test for deciding if an exception of lis pendens should be granted is to inquire whether a final judgment in the first suit would be res judicata in the latter. . . . The exception of lis pendens has the same requirements of identities as the exception of res judicata. . . . Both exceptions serve to promote judicial economy and to prevent harassment. The exception of lis

8

pendens, however, is applicable before judgment on the merits is rendered in any of the pending suits while the exception of res judicata is applicable only after judgment.

*Fincher v. Insurance Corp. of America*, 521 So. 2d 488, 489 (La. Ct. App. 4th Cir. 1988), *writ denied*, 522 So. 2d 570 (La. 1988). The respondents concede in brief that 3M never argued in Louisiana that the respondents' claims were res judicata due to Order 44B. Nor was the res judicata issue finally decided by the state court when it ruled on 3M's lis pendens motion. A Louisiana court must look to common factors in *lis pendens* and *res judicata* proceedings, but the *lis pendens* simply allows the court to exercise its discretion to decline jurisdiction while a res judicata ruling would prevent further litigation of the issue. *Fincher*, 521 So. 2d at 489-90. While the state court considers whether final judgment in the first suit would be resjudicata in the second, it can not "finally reject a claim of res judicata" in a lis pendens proceeding because it is only faced with parallel proceedings, not a final judgment. *Id.* The Full Faith and Credit Act bars an injunction under the relitigation exception only when the state court has "finally rejected a claim of res judicata." *Parsons*, 474 U.S. at 524. Therefore, the Full Faith and Credit Act does not limit the relitigation exception here, because the state court has not yet ruled on the merits of the res judicata issue. *Id.*

As noted above, most courts limit the application of the relitigation exception to those issues which were actually litigated in the federal court. The 36 Respondents voluntarily filed federal actions seeking relief for injuries allegedly related to silicone gel breast implants. Their actions were dismissed pursuant to Order 44B for failure to prosecute in October 1998 and were not reinstated here prior to October 1999. A dismissal for failure to

9

prosecute under Fed. R. Civ. P. 41(b) operates as an adjudication on the merits which bars a subsequent action pursuant to the doctrine of res judicata. *Bierman v. Tampa Electric Co.*, 604 F.2d 929 (5th Cir. 1979). A dismissal for failure to prosecute works no greater hardship on a plaintiff than one ordered on defendant's motion, since the plaintiff can seek reinstatement or can appeal the dismissal as an abuse of discretion. *Bierman*, 604 F.2d at 930. Accordingly, this court concludes that the claims of the 36 Respondents based on injuries allegedly caused by silicone gel breast implants were "presented to and decided by" this court and an injunction is permissible pursuant to the All Writs Act and the relitigation exception to the Anti-Injunction Act. *See Chick Kam Choo*, 486 U.S. at 147.

## IV.   The Equities.

The conclusion that an injunction is permissible under the Anti-Injunction Act does not end the inquiry. Neither party to this proceeding has spoken to the general principles which this court must weigh whenever it is considering equitable relief. Nevertheless, it is clear that this court should not enjoin state proceedings without a showing of irreparable injury. *Mitchum v. Foster*, 407 U.S. 225, 229-30 (1972). "[T]he fact that an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue." *Chick Kam Choo*, 486 U.S. at 151. Upon consideration of the equitable factors, the court finds the motion for injunction is due to be denied without prejudice to the right of 3M to argue the preclusive effect of this court's Order 44B before the state court.

As set out above, the 36 Respondents filed their intervention petitions in the Louisiana action in December 1998. At that time, they would have been free to ask for reinstatement of their federal actions under the terms of Order 44B. At any time before October 26, 1999,

10

the 36 Respondents could have reinstated their federal claims without question. However, on September 18, 2000, when 3M filed the present motion asking for an injunction of the state intervention proceedings, it was too late for the 36 Respondents to reinstate their federal actions. The 36 Respondents have not here claimed that they reasonably and detrimentally relied on 3M's delay, but their ability to further prosecute their claims has clearly been prejudiced by 3M's apparent willingness to proceed in state court for nearly two years.

This court has the power under the All Writs Act, 28 U.S.C. § 1651(a), to enjoin litigants who are abusing the court system by harassing their opponents. *See Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980). However, 3M does not appear to be unduly prejudiced by the 36 Respondents' decision to pursue their claims in state court rather than in federal court. The Louisiana action against 3M has been pending for some time, and the 36 Respondents' intervention was within the time frame contemplated by Order 44B during which 3M was subject to reinstated claims. This is not a case in which a litigious plaintiff is pressing a frivolous claim or abusing the court system to harass the defendant. The 36 Respondents may have been engaging in forum shopping, but this court does not consider their activities to be sufficiently egregious to warrant an injunction.

Finally, 3M has made no showing that the legal defenses of res judicata and collateral estoppel are insufficient to protect its rights. Although the 36 Respondents disagree, 3M argued in brief that it could prove a res judicata defense pursuant to federal common law or Louisiana law. The *Harrelson* court noted, "[a]n injunction of further litigation in any cause of action is generally unnecessary as res judicata and collateral

estoppel are usually more than adequate to protect defendants against repetitious litigation." *Id.* Here, 3M has shown that the 36 Respondents' state claims are repetitious, but this court is not satisfied that they are abusive or harassing. Accordingly, this court will decline to enter an injunction. "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line R.R.*, 398 U.S. at 297.

An appropriate order in accord with this memorandum of opinion will be entered. Done, this ___1st___ of June, 2001.

                                              EDWIN L. NELSON
                                      UNITED STATES DISTRICT JUDGE